**PLAZA NATIONAL BANK, Appellant,**

v.

**Frank MONFREY, Anthony Monfrey, Henry M. Hunter, Jr., and Terry E. Downs, Appellees.**

No. 04–84–00167–CV.

Court of Appeals of Texas, San Antonio.

Feb. 19, 1986.

Rehearing Denied March 25, 1986.

See also 616 S.W.2d 387.

Donald S. Bayne, Law Offices of Robert F. Ritter, San Antonio, for appellant.

Gary W. Mayton, San Antonio, for appellees.

## OPINION

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

CADENA, Chief Justice.

Plaintiff, Plaza National Bank, appeals from a judgment, based on jury findings, that it take nothing in its suit to recover on four promissory notes, each of which was signed by one of the four defendants, Frank Monfrey, Anthony Monfrey, Henry M. Hunter, Jr., and Terry Downs. Defendants admitted execution of the notes and nonpayment, basing their defenses solely on the ground that the notes were unenforceable because each note represented a loan made by Plaza National Bank for the purpose of "aiding or defeating the nomination of any candidate," in violation of article 14.07 of the Texas Election Code in effect at the time each loan was made.[1] Specifically, the defense was that the loans constituted an unlawful "contribution" made by Bank for the purpose of aiding in the election of John Monfrey, who was, at the time of the loans, a candidate for the office of mayor of the City of San Antonio.

In February or March, 1977, John Monfrey, the candidate in question, talked to Roy Diefendorf, president of Bank, about the possibility of obtaining a loan of $100,000.00 to help finance his campaign for mayor. Bank's loan committee refused to approve the loan. Diefendorf testified that he and the loan committee knew that the loan was being sought to assist Monfrey in financing his campaign.

Eddie Garcia, one of Monfrey's employees, testified that Diedendorf told him that the loan committee was unwilling to lend $100,000.00 to a candidate for political office. According to Garcia, Diefendorf, after pointing out that he had authority to approve loans not exceeding $10,000.00 without approval of the committee, suggested that Garcia and Monfrey find ten persons, each of whom would execute a $10,000.00 note, payable to the Bank, in

1. (A) ... it is unlawful for any corporation ... to make a contribution or expenditure ... except as herein expressly provided.

    \*     \*     \*     \*     \*     \*

    (C) As used in this section, the phrase 'contribution or expenditure' shall also include giving, lending, or paying any money or other thing of value, directly or indirectly, to any candidate, or political committee, campaign treasurer, assistant campaign treasurer, or any other person, for the purpose of aiding or defeating the nomination or election of any candidate ... provided, however, that nothing in this section ... shall prevent the making of a loan or loans to any candidate, office-holder, or political committee, for campaign or other lawful purposes by any corporation which is legally engaged in the business of lending money and which has conducted such business continuously for more than one year prior to the making of such loan, provided the loan is made in the due course of business and is not directly or indirectly a contribution....

Acts 1975, 64th Leg., ch. 711, p. 2262. For the present version of the statute see TEX.ELEC. CODE ANN. § 251.010 (Vernon Supp.1986).

return for ten loans, each in the amount of $10,000.00, and that the proceeds of each loan could be deposited in the Monfrey campaign account, with Monfrey being responsible for the repayment of each loan. Garcia testified that the only requirement imposed by Diefendorf was that the ten people who executed the notes should "look good on paper." Diefendorf admitted that he discussed with either Monfrey or Garcia, the possibility of obtaining the desired result by means of ten individual $10,000.00 loans which would be repaid by Monfrey.

Thereafter, John Monfrey and nine others, including the four defendants, each executed a note in the amount of $10,-000.00, evidencing a $10,000.00 loan made by Bank to each signer. The maker of each note received a $10,000.00 cashier's check from the bank. Each cashier's check was endorsed by the payee and given to Diefendorf, who deposited the total, $100,-000.00, in the Monfrey campaign fund account at Plaza National Bank. None of the defendants furnished a financial statement to Bank, and each defendant testified that he was assured by both Monfrey and Diefendorf that his note would be paid by Monfrey.

The original promissory notes were not paid when due and in August, 1977, each of the defendants executed a renewal note. This suit was filed to collect on the renewal notes after the guarantor, John Monfrey, had died.

Diefendorf admitted that, at the time the loans were made, it was known that the money was going into the Monfrey campaign fund and that Monfrey would make the payments on the notes.

In answer to special issues, the jury found that the loans were indirectly made to John Monfrey for his election campaign (issue number two), and that the loans were made by Bank with knowledge that the proceeds of the loans were to be used to aid John Monfrey in his election campaign (issue number three).

Bank contends that the trial court erred in overruling its objection to the charge because the issues submitted did not in-quire whether the loans were "made for the purpose of aiding the election of John Monfrey." The argument is that only loans made for the purpose of aiding or defeating the election or nomination of a candidate were prohibited.

■ The findings that the Bank made the loans indirectly to John Monfrey "for his election campaign" and that Bank knew that the proceeds of the loans were to be used by John Monfrey "in his election campaign" are the equivalent of a finding that the loans were made for the purpose of aiding the election of John Monfrey. "For" means "in order to bring about or further"; "to supply the need of"; "with the purpose or object of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 886 (c. 1981). "Purpose" is synonymous with "plan," "intent," "object" or "aim." *Hogue v. National Bank of Commerce of San Antonio*, 562 S.W.2d 291, 292 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.). "Intent" is "the purpose to use a particular means to effect a certain result." *James Stewart & Co. v. Law*, 149 Tex. 392, 233 S.W.2d 558, 561–62 (1950).

The jury, found that the loans were made to John Monfrey for the purpose of his election campaign. Bank used a particular means—the making of the loans—to effect a certain result—making the proceeds of the loans available for John Monfrey's election campaign—and the loans were made with the knowledge that the proceeds would be used to "aid" in the Monfrey election campaign. The argument that loans made to a candidate "for his election campaign" and with knowledge that the proceeds were to aid that candidate in his election campaign are not made for the purpose of aiding in the election of that candidate can be made only with tongue firmly in cheek.

■ The evidence already summarized is sufficient to establish that Bank's purpose in making the loans was to aid in the election of John Monfrey. Bank's "no evidence" and "insufficient evidence" points lack merit.

Bank's argument that the defense of illegality did not apply to the renewal notes because they were made after the Bank had been in business for more than one year must be rejected. This argument is based on the statutory provision that the statute is inapplicable to loans to candidates made by any corporation which is legally engaged in the business of lending money and which has conducted such business continually for more than one year prior to the making of such loan, if the loan is made in due course of business and is not directly or indirectly a "contribution."

A demand connected with an illegal act cannot be enforced if plaintiff requires any aid from the illegal transaction to establish his cause of action. *International Aircraft Sales, Inc. v. Betancourt,* 582 S.W.2d 632, 635 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). In this case, the consideration for the notes executed by defendants was the unlawful loan by Bank. It was the illegal loan, and not the giving of the promissory notes, which violated the statute. With respect to the conduct prohibited by the statute, the date of the promissory notes upon which Bank bases its claim is irrelevant. Since the loan of money was unlawful, it cannot furnish legal consideration and is insufficient to support the promise of defendants to pay. Where a prior note is based on an illegal consideration, a note given in renewal of such note cannot be enforced. *Park v. Coulson,* 139 S.W.2d 667, 668 (Tex.Civ.App.—Amarillo 1940, no writ).

Defendants did not waive the defense of illegality by executing the renewal notes. A contract that is made in violation of a statute cannot be ratified by subsequent conduct of the obligor. *Mayfield v. Troutman,* 613 S.W.2d 339, 344 (Tex.Civ. App.—Tyler 1981, writ ref'd n.r.e.).

Since Bank is not entitled to recover on the notes, the trial court did not err in denying Bank's claim for attorney's fees.

The judgment of the trial court is affirmed.

TIJERINA, J., dissents without opinion.