**CORNERSTONE BANK, N.A., Appellant,**

v.

**Foster S. RANDLE, Jr., Appellee.**

**No. 05–92–01617–CV.**

Court of Appeals of Texas, Dallas.

Nov. 10, 1993.

Rehearing Denied Dec. 29, 1993.

---

Robert D. Lybrand, Dallas, for appellant.

Grier Pat Jones, Dallas, for appellee.

Before LAGARDE, BURNETT and WHITTINGTON, JJ.

## OPINION ON REHEARING

LAGARDE, Justice.

Appellant's motion for rehearing is granted. This Court's opinion of August 30, 1993, is withdrawn and the judgment is vacated. The following is substituted therefor.

The issue in this appeal is whether an assignee of the state may seek reimbursement for payment of inheritance taxes originally owed to the state (1) from the surviving spouse who is occupying the homestead that was the separate property of his deceased spouse or (2) by foreclosing upon the surviving spouse's possessory homestead interest. We hold that the state (and its assignees) may do neither.

## FACTUAL BACKGROUND

The facts of this case are not in dispute. At the death of Eleanor Southgate Randle, she was survived by her husband, Foster S. Randle, Jr., and her son, George S. Busiek. Her will named her son as independent executor of her estate and left him all of her property, including a house located at 4415

South Versailles in Dallas that was her separate property. Since the time of his wife's death, Randle has continued to occupy the home at 4415 South Versailles pursuant to his constitutional[1] and statutory[2] homestead rights as a surviving spouse.

In his capacities as executor and beneficiary of his mother's will, Busiek borrowed $387,807.84 from Cornerstone Bank and executed a deed of trust that conveyed the property at 4415 South Versailles to a trustee as security for the loan. After Busiek defaulted on the loan, the trustee held a public sale and sold Busiek's remainder interest in the property to Cornerstone Bank. Meanwhile, Busiek had also failed to pay the state inheritance taxes on behalf of his mother's estate as required by section 211.101 of the tax code. To protect its investment, Cornerstone paid $39,290.82 for inheritance taxes due to the State of Texas and received an assignment of the state's rights regarding the taxes, including a lien on the property of Eleanor Randle's estate.

## PROCEDURAL HISTORY

Cornerstone Bank filed suit against Foster S. Randle seeking foreclosure of his homestead right to occupy the property on South Versailles and reimbursement for inheritance taxes that Cornerstone paid to the state. Randle counterclaimed, asserting that if Cornerstone was entitled to judgment of any kind, he should be compensated for the value of his homestead right. Both parties filed motions for summary judgment. The trial court granted Randle's motion and denied Cornerstone's.

## STANDARD OF REVIEW

■ Summary judgment is designed to eliminate unmerited claims or untenable defenses; it is not intended to deprive litigants

1. Article XVI, section 52 of the Texas Constitution states:

On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or

wife, or so long as the survivor may elect to use or occupy the same as a homestead.... TEX. CONST. art. XVI, § 52.

2. "The homestead shall not be partitioned among the heirs of the deceased during the lifetime of the surviving spouse, or so long as the survivor elects to use or occupy the same as a homestead...." TEX.PROB.CODE ANN. § 284 (Vernon 1980).

of their right to a full hearing on fact issues. *Compton v. Calabria*, 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ). The movant must establish entitlement to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of his cause of action or defense as a matter of law. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

 A denial of a motion for summary judgment is properly reviewable by an appellate court when, as here, the appealing party complains of both the denial of its motion and the grant of its opponent's motion. *See Utica Nat'l Ins. Co. v. Fidelity & Casualty Co.*, 812 S.W.2d 656, 658 (Tex.App.—Dallas 1991, writ denied) (citing *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988)). The following standard of review applies to motions for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a material disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## RANDLE'S MOTION

In his motion for summary judgment, Randle argued that he was not a recipient of any property from his wife's estate; therefore, he was not personally liable for the taxes on the property. He also argued that the lien was invalid because Cornerstone voluntarily paid the taxes and because his rights in the property could only be defeated by a purchase money mortgage, home improvement lien, or ad valorem tax lien. By affidavit, Randle swore that he had paid all ad valorem taxes due on the property and was not an executor, legatee, or devisee of his wife's will or estate.

3. Tex.Tax Code Ann. § 111.252 (Vernon 1992).

In Cornerstone's response to Randle's motion, it argued the following: (1) Randle acquired property subject to inheritance taxation and, consequently, he was personally liable for those taxes; (2) the tax code authorizes voluntary payment of another's taxes; and (3) its lien on the property was valid. As summary judgment proof, Cornerstone offered the affidavit of its attorney, Robert Lybrand, which stated that Cornerstone paid $39,290.82 to the State of Texas for inheritance taxes owed by the estate of Eleanor Randle and received, in return, an assignment of the tax lien on the property and subrogation to the state's rights. It further stated that, as required by the tax code, he sent timely notice of the assignment to Randle by registered letter dated May 2, 1991. Cornerstone's summary judgment evidence also included copies of the March 1, 1991 "Assignment and Notice of Subrogation" from the state to Cornerstone, the certified notice letter referenced in the motion itself, and the tax lien on the property.

## POINTS OF ERROR

In its first point of error, Cornerstone asserts that the trial court erred by granting Randle's motion for summary judgment. In support of the trial court's judgment, Randle initially argues that the lien assigned to Cornerstone by the state is invalid because (1) Cornerstone paid the taxes voluntarily and (2) he did not receive thirty days' prior notice of the assignment as required by section 111.252 of the tax code.[3]

 The tax code specifically authorizes any person to voluntarily pay the taxes owed by another person and seek an assignment of the state's right to payment. *See* Tex.Tax Code Ann. § 111.251 (Vernon 1992). The record evidence reflects that Randle did not receive notice of the assignment until after it occurred. We may not affirm a summary judgment on grounds not raised in the motion. *See City of Houston*, 589 S.W.2d at 678. Randle did not urge lack of notice as a ground for summary judgment. Consequently, we cannot affirm on that ground.

For the purpose of this appeal, Cornerstone has all of the rights regarding the collection of the inheritance taxes that the state possessed prior to assignment. On appeal, Cornerstone argues that (1) Randle is personally liable for the inheritance taxes because he "acquired" property subject to taxation and (2) the Texas Constitution does not bar it from foreclosing on property for taxes due on the property. Randle disputes both propositions and, alternatively, asserts that even if Cornerstone is allowed to foreclose on his interest, he is entitled to compensation for the value of that interest.

We divide our discussion into two parts: (1) Randle's personal liability for the inheritance taxes paid by Cornerstone and (2) foreclosure of Randle's homestead rights as a surviving spouse.

### Randle's Personal Liability

Chapter 211 of the Texas Tax Code is the current statutory scheme for inheritance taxation in Texas. Under this scheme, a tax is imposed on the transfer at death of every resident's property. *See* TEX.TAX CODE ANN. § 211.051(a) (Vernon 1992). This tax is equal to the amount of the federal tax credit provided by section 2011 of the Internal Revenue Code. TEX.TAX CODE ANN. §§ 211.-001(4), 211.051(a) (Vernon 1992); *see* 26 U.S.C.A. § 2011 (West 1989). The tax is to be paid either by the personal representative of the decedent's estate or other person liable for the tax. TEX.TAX CODE ANN. § 211.-101 (Vernon 1992). Section 211.108 makes personally liable for the tax "[a]ny person acquiring any property subject to taxation under this chapter [211], to the extent of the value of all property so acquired." TEX.TAX CODE ANN. § 211.108 (Vernon 1992). Randle maintains that he is not personally liable for the inheritance taxes because his homestead interest is not property he "acquired" "subject to taxation under this chapter."

Cornerstone asserts that Randle's homestead interest is property he acquired subject to state inheritance taxes. To support this assertion, Cornerstone relies on *Estate of Johnson v. Commissioner,* 718 F.2d 1303 (5th Cir.1983). In *Estate of Johnson,* the Fifth Circuit held that the value of the sur-

viving spouse's homestead interest was included in the decedent's gross estate. *Id.* at 1316. Because state inheritance taxes are determined from the federal tax provisions, and because the homestead interest is included in the gross estate for federal inheritance tax purposes, Cornerstone asserts that it must also be property subject to state inheritance taxes. From these propositions, Cornerstone concludes that Randle *acquired* his homestead interest subject to the inheritance taxes.

Cornerstone confuses the issue of whether certain property is included in the estate for purposes of taxation with the issue of whether an individual acquired that property subject to taxation. In *Estate of Johnson,* the decedent wife left to her children two pieces of real estate that were her separate property. Her surviving husband, however, asserted his right under Texas law to continue to use and occupy both tracts as his homestead. *Id.* at 1309. When the wife's estate filed its tax return, it reported the tracts as encumbered by the husband's homestead interests and therefore worth far less than they would be without the homestead interest. *Id.* The Commissioner redetermined the value of the property without the deduction for the husband's homestead interest and determined a deficiency existed in the wife's federal estate tax. *Id.* The tax court held that the estate was correct in deducting the value of the husband's homestead interest from the value of the property in determining the gross estate. *Id.* at 1310. On appeal, the Fifth Circuit reversed the decision of the tax court and held that the wife's gross estate included the value of the husband's homestead rights and that the tax court erred in deducting the value of the homestead rights from the value of the property in determining the gross estate.

A decedent's "gross estate" includes the value at the time of death of all property to the extent of the decedent's interest in the property. 26 U.S.C.A. § 2033 (West 1989). In addition, certain types of property are included in the gross estate beyond the extent of the decedent's interest. *See, e.g.,* 26 U.S.C.A. §§ 2034–2043 (West 1989) (dower or curtesy interests, gifts made within three

years of death, transfers with retained life estate, transfers taking effect at death, revocable transfers, annuities, joint interests, powers of appointment, proceeds of life insurance, and transfers for insufficient consideration). In *Estate of Johnson*, the Fifth Circuit determined that homestead rights fell under the section that included interests in lieu of dower or curtesy in the decedent's gross estate, without regard to whether the decedent had a state-law interest in that property. *See Estate of Johnson*, 718 F.2d at 1316; *see also* 26 U.S.C.A. § 2034 (West 1989).[4] Thus, section 2034 of title 26 of the United States Code, *Estate of Johnson*, and section 211.051(a) of the Texas Tax Code make the value of the homestead interest subject to the state inheritance tax.

Although Randle's homestead interest is subject to the inheritance tax, Randle is personally liable for the tax only if he acquired the interest subject to the tax. *See* TEX.TAX CODE ANN. § 211.108 (Vernon 1992). Nowhere in *Estate of Johnson* does the Fifth Circuit presume to hold that homestead rights are transferred to the surviving spouse at the decedent spouse's death. Indeed, the Fifth Circuit notes that Texas homestead rights are vested rights, not inchoate rights that transfer to the surviving spouse at death. *See Estate of Johnson*, 718 F.2d at 1312 n. 36, 1315. Thus, while *Estate of Johnson* supports the conclusion that Randle's homestead interest is subject to inheritance taxes, it does not support the conclusion that Randle *acquired* his homestead interest subject to state inheritance taxes.

In the absence of authority construing section 211.108, a decision by the Supreme Court of Texas that preceded the enactment of section 211.108 sheds some light on the meaning of "acquiring." *See Calvert v. Wallrath*, 457 S.W.2d 376, 377 (Tex.1970). At the time of the decision, a tax was imposed on all property passed by trust, will, etc.; or transfer intended to take effect in possession or enjoyment after the death of the grantor or donor; or transfer made in contemplation of death. *See id.* The issue facing the court was whether the surviving owner of a joint banking account with right of survivorship acquired any interest subject to the state inheritance tax upon the death of the other joint owner. *See id.* The court noted that the joint account with right of survivorship was not a gift intended to take effect by possession or enjoyment at death because the right of survivorship, including the right to undivided possession of the property, vested at the creation of the joint tenancy. *See id.* at 378. Accordingly, the court concluded that the surviving owner of a joint banking account with right of survivorship did not acquire any interest subject to inheritance taxation upon the death of the other joint owner. *See id.* at 377.

Although the analogy between joint banking accounts with right of survivorship and the homestead rights of surviving spouses is not exact, we conclude that there are enough similarities to justify holding that Randle never acquired property subject to inheritance taxation. *Compare Calvert*, 457 S.W.2d at 376–77 (joint tenants have undivided possession of property held by joint tenancy), *with United States v. Rodgers*, 461 U.S. 677, 685, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983) (the effect of article XVI, sections 50 and 52 of the Texas Constitution—which establish the homestead rights of spouses—is to give each spouse "a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment"). The Supreme Court has interpreted the article XVI, section 52 homestead rights of a surviving spouse as a contin-

4. That section reads:
The value of the gross estate shall include the value of all property to the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower or curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy. 26 U.S.C.A. § 2034 (West 1989).
The federal regulation for this section reads:
Dower or curtesy interests. A decedent's gross estate includes under section 2034 any interest in the decedent's surviving spouse existing at the time of the decedent's death as dower or curtesy or any interest created by statute in lieu thereof (although such other interest may differ in character from dower or curtesy). Thus, the full value of property is included in the decedent's gross estate, without deduction of such an interest of the surviving husband or wife, and without regard to when the right to such an interest arose.
Treas.Reg. § 20.2034–1 (1958).

uation of the article XVI, section 50 separate homestead rights vested in each spouse during marriage. *See Rodgers*, 461 U.S. at 698 n. 25, 103 S.Ct. at 2145 n. 25 (citing *Norman v. First Bank & Trust*, 557 S.W.2d 797, 802 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.)); *see also Franklin v. Woods*, 598 S.W.2d 946, 949 (Tex.Civ.App.—Corpus Christi 1980, no writ). Property does not become subject to the inheritance tax until the death of its owner. *See* TEX.TAX CODE ANN. § 211.051 (Vernon 1992). Thus, the homestead interest, like a joint tenancy with right of survivorship, vests before the property becomes subject to the inheritance tax. Also, like a joint tenancy with right of survivorship, a homestead interest is not an interest intended to take effect in possession or enjoyment after death. Nor is it a transfer made in contemplation of death.[5]

Accordingly, Randle did not acquire property subject to taxation and has no personal liability for the tax.

### *Foreclosure of Randle's Possessory Homestead Rights*

■ In its brief, Cornerstone argues that section 211.252(a) of the tax code provides for a lien on the entire estate of the deceased, including exempt property, to secure payment of inheritance taxes. But section 211.-252(a) was repealed more than ten years ago.[6] However, another provision of the tax code, section 113.001, provides for a lien on property for taxes due under "this title." TEX.TAX CODE ANN. § 113.001 (Vernon 1992). Because section 113.001 and the subchapter governing inheritance taxation are both found in title 2 of the tax code, we conclude that the scope of liens imposed by the state for inheritance taxes is governed by section 113.001.

Section 113.001 states:

(a) All taxes, fines, interest, and penalties *due by a person* to the state under this title are secured by a *lien on all of the person's property that is subject to execution.*

(b) The lien for taxes attaches to all of the property of a person liable for the taxes.

TEX.TAX CODE ANN. § 113.001 (Vernon 1992) (emphasis added). From the plain language of this statute, we draw two conclusions. First, the plain meaning of the language "due by a person to the state ... are secured by a lien on all of the person's property" is that a person's property does not become subject to a state tax lien *unless* that person is personally liable for the taxes. Having previously held that Randle is not personally liable for the inheritance tax, it follows that no lien attached to his possessory homestead right. Cornerstone may not foreclose on a lien that does not exist.

Even assuming arguendo that this reading of section 113.001 is wrong, the result would remain the same. The second conclusion that we draw from section 113.001's language "lien on all of the person's property that is subject to execution" is that a lien attaches only to nonexempt property.

■ As to whether the homestead right of a surviving spouse is property subject to execution, the Texas Constitution states:

The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, *the taxes due thereon*, or for work and material used in constructing improvements thereon....

TEX. CONST. art. XVI, § 50 (emphasis added). Upon the death of one spouse, the survivor may elect to occupy the homestead for the rest of his or her life. *See* TEX. CONST. art. XVI, § 52. This right may be exercised by the surviving spouse even if the homestead was the separate property of the deceased spouse. *Lindsley v. Lindsley*, 139 Tex. 512, 518, 163 S.W.2d 633, 636 (1942); *Hunter v. Clark*, 687 S.W.2d 811, 814 (Tex.App.—San

---

5. We do not decide here whether property interests subject to the inheritance tax other than the homestead right that vest before the deceased's death render the possessor of the interest personally liable for the inheritance taxes on that interest.

6. *See* Act of August 11, 1981, 67th Leg., 1st C.S., ch. 17, 1981 Tex.Gen.Laws 186, 188, *repealed by* Act of May 2, 1983, 68th Leg., R.S., ch. 90, § 5, 1983 Tex.Gen.Laws 439, 442.

Antonio 1985, no writ). Cornerstone seeks foreclosure to reimburse itself, as assignee, for inheritance taxes it paid on Eleanor Randle's estate. Cornerstone does not seek foreclosure to secure payment for purchase money debt or improvements to the homestead. Therefore, the constitution prohibits foreclosure of Mr. Randle's homestead rights unless the inheritance tax is a tax on the property itself.

Regarding the nature of the state inheritance tax, Cornerstone acknowledges that prior to its amendment in 1981, section 211.051 [7] and its predecessor, article 14.12A of the Texas Revised Civil Statutes,[8] imposed a tax on the privilege of succession rather than the property itself. *See Cahn v. Calvert,* 159 Tex. 385, 390, 321 S.W.2d 869, 872 (1959). Cornerstone argues, however, that the current inheritance tax scheme is modeled upon the federal scheme for taxation of estates. *Compare* TEX.TAX CODE ANN. § 211.051(a) (Vernon 1992) (imposing a tax equal to the amount of the federal credit on the "transfer at death of the property of every resident") *with* 26 U.S.C.A. § 2001 (West 1989) ("A tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or a resident of the United States."). Finally, Cornerstone asserts that estate taxes due to the federal government form a lien against the decedent's entire estate. *See Thompson v. Thompson,* 149 Tex. 632, 648, 236 S.W.2d 779, 789 (1951). Because the state scheme is based on the federal scheme, Cornerstone argues that state inheritance taxes are taxes upon the property itself; consequently, its lien attached to the entire estate of Eleanor Randle.

■ Cornerstone's arguments are unpersuasive. First, the property to which a federal estate tax lien attaches is irrelevant to our inquiry because state-created exemptions against forced sale such as those found in our state constitution do not prevent the federal government from forcing the sale of a homestead. *See United States v. Rodgers,* 461 U.S. at 701, 103 S.Ct. at 2146. On the other hand, this Court is constrained by the state constitutional prohibition against forced sale of homesteads. Furthermore, the Supreme Court has stated that the federal estate tax is a tax upon transfers at death. *See Fernandez v. Wiener,* 326 U.S. 340, 352, 66 S.Ct. 178, 184, 90 L.Ed. 116 (1945); *see also YMCA v. Davis,* 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558 (1924). For the above reasons, we hold that state inheritance taxes, just as the federal estate taxes upon which they are based, are not taxes on property for the purpose of article XVI, section 50 of the Texas Constitution. Accordingly, as a matter of law, Cornerstone is not entitled to foreclose upon Randle's possessory homestead interest and force the sale of the property in question.

Because there are no genuine issues of material fact and the trial court correctly applied the law to the facts, we overrule Cornerstone's first point of error.

In its second point of error, Cornerstone asserts that the trial court erred by denying its amended motion for summary judgment. In its amended motion, Cornerstone argued that it was entitled to summary judgment because Randle was personally liable for the inheritance taxes and the lien on the property was valid. We have already concluded that Randle was not personally liable for the taxes and the lien did not attach to his possessory homestead interest. Accordingly, we overrule Cornerstone's second point of error.

We affirm the trial court's summary judgment.

---

7. Act of May 31, 1981, 67th Leg., R.S., ch. 389, 1981 Tex.Gen.Laws 1490, 1748, *amended by* Act of June 1, 1981, 67th Leg., R.S., ch. 752, 1981 Tex.Gen.Laws 2750, 2761–62.

8. *Recodified at section 211.051 of the Texas Tax Code by* Act of May 31, 1981, 67th Leg., R.S., ch. 389, 1981 Tex.Gen.Laws 1490, 1748.