Frank L. **CROWDER** and Marion N. Crowder, Appellants,

v.

**BENCHMARK BANK, Appellee.**

No. 05–93–01939–CV.

Court of Appeals of Texas, Dallas.

Oct. 17, 1994.

Lawrence J. Fossi and Steven C. Malin, George M. Yarbrough, Jr. and Nancy G. Elliott, Dallas, for appellants.

G. Roland Love and Trent A. Gudgel, Dallas, for appellee.

Before LAGARDE, BURNETT,[1] and MALONEY, JJ.

## OPINION

MALONEY, Justice.

Marion N. and Frank L. Crowder petitioned the court for declaratory judgment and sued Benchmark Bank for wrongful foreclosure and breach of contract. The Crowders appeal the trial court's grant of Benchmark's summary judgment motion and denial of their summary judgment motion. In fourteen points of error, the Crowders assert: (1) only the federal government can foreclose a federal tax lien on a Texas homestead; (2) if a private party could acquire a federal tax lien through subrogation, it would have to comply with the federal foreclosure procedures; (3) foreclosure on nonexempt acreage did not validate foreclosure on the exempt portion of the Crowders' estate;[2] and (4) Benchmark cannot justify either its novation or accord and satisfaction arguments. Benchmark raises two counterpoints, alleging that the trial court properly granted its summary judgment motion because: (1) it had a valid lien against the homestead because the loan proceeds satisfied a federal tax lien; and (2) the Crowders' summary judgment affidavits were inadmissible.[3] We reverse the trial court's summary judgment.

## FACTUAL BACKGROUND

Frank Crowder was an insurance salesman. He operated as a sole proprietorship until he formed Crowder Insurance Agency, Inc. (the Corporation) in 1983. Thereafter, he conducted all his business through the Corporation.

In early 1984, Frank Crowder filed payroll withholding taxes under the sole proprietorship's tax identification number instead of the Corporation's tax number. Because of this error, the Internal Revenue Service (IRS) filed tax liens against Frank Crowder and the Corporation in 1985. The Corporation itself did not pay similar taxes in 1985 and the IRS filed additional tax liens in 1986. The IRS neither assessed taxes nor asserted a lien against Marion Crowder.

Frank Crowder borrowed money from Allen National Bank, Benchmark's predecessor, to pay the taxes. At the bank's request, both Crowders signed a promissory note and deed of trust which purported to create a lien against the Crowder estate. The Crowders used the loan proceeds to pay the federal tax assessment.

The Crowders fell behind in their loan payments. In December 1989, Benchmark foreclosed on the Crowders' estate at a nonjudicial foreclosure sale. The Crowders never segregated their exempt one acre from the excess.

## SUBROGATION

In the Crowders' first, second, fifth, and sixth points of error, they argue the trial court erred in granting Benchmark's motion for summary judgment and denying their motion for summary judgment because Benchmark did not have a valid lien. Specifically, they contend in:

points of error numbers one and two: Benchmark was not subrogated to any lien against the homestead; and

points of error numbers five and six: Only the federal government could foreclose such a tax lien against a homestead.

Benchmark responds the homestead is not immune from enforcement of a federal tax lien. Because the Crowders used the loan proceeds to pay off federal tax liens, Benchmark contends it is equitably subrogated to

---

1. Although Justice Burnett participated in the submission of this case, he retired September 1, 1994 and did not participate in this opinion.

2. The Crowders owned 1.85 acres of land. They designated their land as an urban homestead, but did not segregate the exempt portion. We use the term the "Crowders' estate" to refer to the entire 1.85 acres—the one-acre homestead and the excess .85 acres.

3. We do not address Benchmark's counterpoint that complains of the trial court's admitting the Crowders' summary judgment affidavits because Benchmark's complaints are not material to our disposition.

the IRS's liens. Additionally, Benchmark maintains the loan documents provided for contractual subrogation.

### 1. Applicable Law

■ Texas law provides for equitable and contractual subrogation. *See Smart v. Tower Land Inv. Co.,* 597 S.W.2d 333, 337–38 (Tex.1980). "Contractual subrogation" is sometimes referred to as "legal subrogation," and "equitable subrogation" is sometimes referred to as "conventional subrogation." *See Interfirst Bank Dallas v. United States Fidelity & Guar. Co.,* 774 S.W.2d 391, 397 (Tex.App.—Dallas 1989, writ denied).

■ "There is no older nor more well established law in Texas jurisprudence than the constitutional protection from forced sale of a homestead." *Mallou v. Payne & Vendig,* 750 S.W.2d 251, 255 (Tex.App.—Dallas 1988, writ denied). The Texas Constitution limits which liens may attach to Texas homesteads:

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married.

Tex. Const. art. XVI, § 50; *see Cornerstone Bank, N.A. v. Randle,* 869 S.W.2d 580, 586–87 (Tex.App.—Dallas 1993, no writ); *see also* Tex.Prop.Code Ann. § 41.001 (Vernon Supp. 1994). The Texas Constitution prohibits tax liens against homesteads which are not taxes against the property itself. Tex. Const. art. XVI, § 50; *see Thompson v. Thompson,* 149 Tex. 632, 648, 236 S.W.2d 779, 788 (1951).

■ "The Texas Constitution derives its force from the people of Texas. This is the fundamental law under which the people of this state have consented to be governed." *Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989). State courts cannot question or vary from constitutional mandates. *See Dawkins v. Meyer,* 825 S.W.2d 444, 448 (Tex.1992). Texas statutes also require that an enforceable tax lien originate from a tax assessment against the property. *See* Tex.Prop.Code Ann. § 41.001(b)(2); *Randle,* 869 S.W.2d at 587. Only the Supremacy Clause of the United States Constitution permits the federal government to enforce its nonproperty tax liens against Texas homesteads. *See United States v. Rodgers,* 461 U.S. 677, 701, 103 S.Ct. 2132, 2146–47, 76 L.Ed.2d 236 (1983).

■ Texas courts do not enforce illegal contracts. *Ben E. Keith Co. v. Lisle Todd Leasing, Inc.,* 734 S.W.2d 725, 727 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). A contract whose enforcement would necessarily violate the constitution or statutes is illegal. *First Tex. Sav. Ass'n v. Dicker Ctr.,* 631 S.W.2d 179, 186 (Tex.App.—Tyler 1982, no writ). Estoppel or ratification will not make an illegal contract enforceable. *Plaza Nat'l Bank v. Monfrey,* 706 S.W.2d 714, 717 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.).

■ Texas courts explain equitable subrogation as follows:

> Equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. A right of subrogation is often asserted by one who pays a debt owed by another. If entitled to full subrogation, the payor is allowed to enforce the rights available to the creditor, such as rights against the debt's security. Subrogation to the creditor's rights is available, however, only when the debtor was enriched unjustly; thus, the payor who confers a benefit as a 'mere volunteer' is not entitled to this remedy.... [O]ne who pays property taxes assessed on property owned by another is entitled to subrogation to the taxing authority's constitutional and statutory lien.

*Smart,* 597 S.W.2d at 337–38; *see First Nat'l Bank v. O'Dell,* 856 S.W.2d 410, 415 (Tex. 1993). Texas courts favor equitable subroga-

tion. *See Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.,* 576 S.W.2d 794, 807 (Tex.1978). "A court in equity may not do that which the law forbids." *United States v. Coastal Ref. & Mktg., Inc.,* 911 F.2d 1036, 1043 (5th Cir.1990); *see Immigration & Naturalization Serv. v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988). Equity follows the law. *Ray v. Peters,* 422 S.W.2d 615, 616 (Tex.Civ.App.—Waco 1967, no writ); *see Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 663–64 (Tex.1990) (no remedy for breach or tortious interference with a contract contrary to public policy); *Ben E. Keith Co.,* 734 S.W.2d at 727 (no remedy in law or equity for contract that was contrary to law and public policy).

### 2. Application of Law to Facts

■ The trial court's summary judgment order recites that the court granted summary judgment on the tax lien and related deed of trust. We confine our review of the trial court's summary judgment to the ground specified in its order.

The Corporation did not pay federal payroll taxes. The IRS filed tax liens against the Crowders' estate. Frank Crowder borrowed money from Benchmark's predecessor to pay the IRS's liens. He paid the IRS liens with the loan proceeds.

Additionally, the Crowders signed the note and gave the bank a deed of trust against property which included their exempt homestead and the adjacent, nonexempt property. The deed of trust contained a subrogation clause which provided:

> To the extent that the proceeds of the indebtedness secured hereby are utilized to renew or extend any indebtedness or take up or pay any outstanding liens against the mortgaged property, or any portion thereof, Beneficiaries shall be subrogated to any and all rights and liens owned or claimed by any owner or holder of said outstanding rights and liens, however remote, regardless of whether said rights and liens are acquired by assignment or are released by the holder thereof upon payment.

The Crowders and Benchmark agree this created a contractual right of subrogation.

The Texas Constitution abhors a federal tax lien against a Texas homestead. However, the Texas Constitution yields to the federal government's tax lien because of the Supremacy Clause. The IRS could have foreclosed on its tax lien.

Benchmark cannot benefit from the Supremacy Clause. Texas courts will not enforce a deed of trust which provides for subrogation contrary to the Texas Constitution and the public policy which it represents. Nor will we permit subrogation which would violate a statute. To allow Benchmark the right of subrogation would violate our Texas Constitution and statutes.

■ We hold a private party cannot obtain or enforce a government's lien that is contrary to the Texas Constitution, Texas statutes, or Texas public policy. As a matter of law, Benchmark did not have a valid and enforceable lien interest against the Crowders' one-acre homestead.

The trial court erred in concluding that Benchmark had a valid lien and could foreclose on the Crowders' homestead under either contractual or equitable subrogation to the IRS's tax lien. We sustain the Crowders' first, second, fifth, and sixth points of error.

### THE CROWDERS' ESTATE

In the Crowders' ninth point of error, they argue that before Benchmark could foreclose on the excess .85 acres, it had to first segregate the exempt homestead from the estate. Benchmark responds that it had no obligation to seek segregation of the estate before foreclosure. Benchmark maintains the Crowders had the burden to object and seek segregation before the foreclosure sale.

### 1. Applicable Law

■ One acre of an estate qualifies as an urban homestead. TEX. CONST. ART. XVI, § 51. The party asserting a homestead right may voluntarily designate his exempt one acre and segregate it from the excess. TEX. PROP.CODE ANN. § 41.005(b) (Vernon Supp. 1994). If the party asserting a homestead

right has not voluntarily segregated his one-acre homestead from the excess, a creditor may compel segregation of the excess. TEX. PROP.CODE ANN. §§ 41.021–.023 (Vernon Supp.1994).[4]

Before a lien holder forces sale of a homestead, "the exempt portion must be ascertained and, if possible, the excess segregated from the homestead." *Mallou,* 750 S.W.2d at 255. If the property cannot be partitioned, only that percentage attributable to the nonexempt property should be offered for sale. *Id.* A foreclosure sale conducted on an unsegregated estate is a nullity. *See id.* at 257.

### 2. Application of Law to Facts

Benchmark foreclosed on the Crowders' entire estate. The parties do not dispute that Benchmark had a valid lien against the excess .85 acres under the promissory note and deed of trust.

Benchmark relies on *Means v. United Fidelity Life Insurance Co.,* 550 S.W.2d 302 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Lewis v. Investors Savings Ass'n,* 411 S.W.2d 794 (Tex.Civ.App.—Fort Worth 1967, no writ); and *Mazow v. Brazle,* 337 S.W.2d 734 (Tex.Civ.App.—Eastland 1960, no writ), among others, to show that Texas does not require Benchmark to seek segregation of the Crowders' one-acre exempt homestead. Benchmark misplaces its reliance on these cases. Each predates (1) the 1983 amendment to the Texas Constitution, which changed the urban homestead exemption from value to acreage; and (2) the 1987 amendments to the Texas Property Code.

Because Benchmark foreclosed on the unsegregated estate, its foreclosure was a nullity. We sustain the Crowders' ninth point of error.

4. These provisions of the Texas Property Code refer to "writs of execution" and "judgment creditors." However, given the unavailability of most liens against homesteads, we conclude that the cited code provisions are equally applicable to situations such as the one before us.

5. We are aware that an appellate court can render judgment on a partial summary judgment motion when the movant originally requested declaratory relief. *See Bowman v. Lumberton Indep. Sch. Dist.,* 801 S.W.2d 883, 889 (Tex.

Because of our disposition of the Crowders' first, second, fifth, sixth, and ninth points of error, we need not address the Crowders' third, fourth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, and fourteenth points of error. Nor need we address Benchmark's counterpoints of error. TEX. R.APP.P. 90(a).

### DISPOSITION

When the trial court grants the summary judgment motion of one party and denies that of the other party, the appellate court may reverse the trial court's judgment and render such judgment as the trial court should have rendered, including judgment for the other party. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). An appellate court may not, however, reverse summary judgment for one party and render judgment for the other party unless all parties have sought final judgment relief in their respective motions for summary judgment. *Runyan v. Mullins,* 864 S.W.2d 785, 790 (Tex. App.—Fort Worth 1993, writ denied).

Because the Crowders did not seek final relief in their motion for partial summary judgment,[5] we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

1990). The *Bowman* court limited its decision to a declaratory judgment which severed liability from damages. Here, the Crowders sought alternative relief from the trial court on wrongful foreclosure. The trial court's summary judgment recited that the Crowders take nothing and denied relief in "all things." Our reversal of summary judgment revives the Crowders' alternative request for relief. Therefore, we do not render judgment for the Crowders.