BEN E. KEITH COMPANY, Appellant,

v.

LISLE TODD LEASING, INC., John Partlow and Pat Partlow, Appellees.

No. 05-86-01061-CV.

Court of Appeals of Texas, Dallas.

July 13, 1987.

Rehearing Denied Aug. 31, 1987.

Claude E. Ducloux, Austin, Stewart David Greenlee, Douglas Fraser, amicus curiae, Austin, for appellant.

Rodney R. Elkins, Dallas, T. Kellis Dibrell, San Antonio, for appellee.

Before STEPHENS, HOWELL and THOMAS, JJ.

STEPHENS, Justice.

In this case, appellant Ben E. Keith Company, hereinafter Keith, challenges a decision by the trial court that appellees Lisle Todd Leasing, Inc., John Partlow, and Pat Partlow, hereinafter collectively referred to as Partlow, were entitled to recover the difference between the agreed lease charges Keith actually paid Partlow and the minimum intrastate trucking rates promulgated by the Texas Railroad Commission. Keith raises five points of error on appeal. We agree with Keith's first point of error: that the trial court erred in allowing Partlow to recover based upon the

Texas Motor Common Carrier tariff rates because Partlow did not obtain a contract carriers permit as required by Article 911b, Section 6(a) of the Texas Revised Civil Statutes. Accordingly, we reverse the judgment of the trial court and render judgment that Partlow take nothing.

The record reflects that in December 1978 Keith and Partlow entered into a lease agreement whereby Partlow agreed to haul beer from a Houston brewery to Dallas, and transport empty containers from Dallas to Houston. Two subsequent similar lease agreements were entered into by Keith and Partlow. The parties both believed that they were acting legally pursuant to Texas Revised Civil Statutes article 6701c–1, and believed that they had complied with the provisions of that statute. Due to continuing disputes between Keith and Partlow regarding the sums owed by Keith to Partlow, Keith terminated the leases in 1981. Partlow brought suit in December 1982 alleging that in hauling beer for Keith, he was acting as a contract carrier under the provisions of Article 911b, Section 6(a) of the Texas Revised Civil Statutes, and was therefore "required to charge, as a minimum rate, that rate prescribed for common carrier motor carriers when performing the same service." Partlow alleged that "when applying the common carrier rate to the shipments actually conducted, and after deducting those sums of money in fact paid by Defendant to Plaintiffs, Plaintiffs were paid $621,-535.63 dollars less than should have been charged using the common carrier rate."

Trial was to the court, without a jury. The trial court entered judgment for Partlow and ordered that Partlow recover from Keith: (1) the sum of $1,108,190.26; (2) pre-judgment interest in the amount of $682,381.40; (3) $45,000 in attorney's fees through an application for writ of error to the Texas Supreme Court, provided that Partlow file a $10,000 remittitur should there be no application for writ of error, and provided that Partlow file an additional $10,000 remittitur should there be no appeal of the case to this Court; and (4) post-judgment interest at the rate of ten percent simple interest from July 21, 1986,

until the judgment is paid. The trial court filed, upon Keith's request, its findings of fact and conclusions of law.

Both Keith and Partlow agree that the determinative statute in the case at bar is Article 911b of the Texas Revised Civil Statutes. Article 911b provides, in pertinent portion:

> Sec. 1. (g) the term "motor carrier" means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any court whatsoever owing, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this state, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed....

> Sec. 1. (h) The term "contract-carrier" means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier.

> Sec. 6. (a) No motor carrier now operating as a contract carrier shall so operate until it shall have received a permit from the Commission to engage in such business ...;

> Sec. 6–aa. The Commission is hereby vested with power and authority and it is hereby made its duty to prescribe rules and regulations covering the operation of contract carriers in competition with common carriers over the highways of this State and the Commission shall prescribe minimum rates, fares and charges to be collected by such contract carriers....

TEX.REV.CIV.STAT.ANN. art. 911b § 1(g) (Vernon Supp.1987), § 6(a) & § 6–aa (Vernon 1964). Likewise, both Keith and Partlow rely on the same cases to support their opposite positions. We disagree with both Partlow's interpretation of the relevant case law, and Partlow's interpretation of Article 911b. We will not attempt to discuss or explain Partlow's misconstruction

of the pertinent law. Instead we will address Keith's first point of error, which is dispositive of this appeal, and apply the correct interpretation of the relevant law.

In its first point of error, Keith contends that "the trial court erred in awarding any recovery based upon the Texas Motor Common Carrier Tariff Rates to a party who is not properly certified or permitted by the Railroad Commission of Texas." Keith argues four subpoints under its first point of error; however, we find it unnecessary to reach the subpoints since the point of error as recited above is dispositive of this appeal.

 The parties stipulated that Partlow never obtained a contract carrier permit as required by Article 911b, Section 6(a). Section 6(a) unequivocally states: "No motor carrier ... that ... desire[s] to engage in the business of a contract carrier shall so operate *until* it shall have received a permit" (emphasis added). Clearly, the parties did not comply with this statute. Hence, Partlow was illegally acting as a contract carrier. *See generally, State v. Bounds,* 604 S.W.2d 74 (Tex.1980).

Partlow concedes that it was acting as a contract carrier and that it did not have a permit, but nonetheless asserts that it was entitled to collect the rates set by the Railroad Commission for the hauling services provided to Keith. We cannot agree. Any operations by Partlow as a contract carrier performed without proper operating authority were illegal. *Accord Turner v. Gossett,* 267 S.W.2d 877, 878–79 (Tex.Civ.App.—San Antonio 1954, no writ). Ordinarily the Texas courts will not enforce an illegal contract, particularly where the contract involves the doing of an act prohibited by statutes intended for the protection of the public health and welfare, and it is the duty of the court to at once decline to give it any validity. *Peniche v. Aeromexico,* 580 S.W.2d 152, 155 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). The Texas Motor Carrier Act, Article 911b, specifically provides in Section 22b that "[t]he business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business af-fected with the public interest." Keith and Partlow entered into a contract involving the doing of an act (i.e. hauling as a contract carrier without a permit) prohibited by a statute that was enacted for the protection of the public health and welfare. Therefore, we decline to give the contract any validity. An agreement to undercut the tariff rates set by the Railroad Commission will not be enforced. *See generally, Steele v. General Mills,* 329 U.S. 433, 67 S.Ct. 439, 91 L.Ed. 402 (1947). We hold that the contract lease agreements between Partlow and Keith were illegal and are therefore void. Since Keith and Partlow's agreement is void, there is no basis for the instant suit. The trial court erred in awarding recovery based upon the Texas Motor Common Carrier Tariff rates to Partlow because Partlow did not obtain the requisite Railroad Commission permit and was therefore operating illegally. Keith's first point of error is sustained. Accordingly, we reverse the judgment of the trial court and render judgment that Partlow take nothing.