Norwin H. VOGEL and Erline
E. Vogel, Plaintiffs,

v.

Daniel A. GLICKMAN, Secretary of
U.S. Department of Agriculture,
Defendant.

No. Civ.A. SA–97–CA–212–F.

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 14, 2000.

Les Mendelsohn, Les Mendelsohn & Associates, P.C., San Antonio, TX, for plaintiffs.

Jerry T. Steed, R. Scott Carlyon, Baucum and Steed, P.C., San Antonio, TX, Harold O. Atkinson, U.S. Attorney's Office, San Antonio, TX, for defendants.

## ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

BIERY, District Judge.

Before the Court are the Second Motion for Summary Judgment, or Alternatively Partial Summary Judgment, of Defendant, United States of America, Acting by and Through Daniel A. Glickman, Secretary of United States Department of Agriculture, and Brief in Support (docket no. 88), plaintiff's response (docket no. 93), defendant's reply (docket no. 94) and plaintiff's response (docket no. 95). After careful consideration, the Court is of the opinion defendant's motion for summary judgment should be granted.

### PROCEDURAL HISTORY

Plaintiffs filed suit seeking a declaration the 1979 Deed of Trust lien held by the United States of America, acting by and through the Farmers Home Administration (now known as the Farm Service Agency) and the United States Department of Agriculture, is invalid and unenforceable because the land against which the 1979 deed of trust lien is plaintiffs' homestead and is exempt under the Texas Constitution, Art. XVI §§ 50 and 51, and the Texas Property Code § 41.001, et seq. The issues regarding plaintiffs' alleged homestead rights were previously briefed in the context of counter-motions for summary judgment. This Court denied the motions finding genuine issues of material fact exist which preclude summary judgment.

The government now files a second motion for summary judgment based on the legal theory of subrogation. Defendant maintains it is entitled to summary judgment to the extent the lien is subrogated to the purchase money liens and real property taxes regardless of whether the dis-

puted land is the Vogels' homestead.[1] Plaintiffs do not agree.

### SUMMARY JUDGMENT STANDARD

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988); *Marshall v. East Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 321–22 (5th Cir.1998). Once a proper motion has been filed, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence setting forth specific facts which show the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. All summary judgment evidence must be construed "in the light most favorable to the nonmoving party", *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 n. 14 (5th Cir.1993)), and the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Palmer v. BRG,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

### THE TRANSACTIONS

- On February 9, 1972, plaintiffs purchased 139.021 acres in Guadalupe County, Texas (part of the disputed land) for $80,000. Purchase money financing of $55,000 was provided by Westside Bank ("Westside"). The note executed by plaintiffs to Westside was secured by a vendor's lien retained in the deed by which they ac-

---

1. The government states: "If the disputed land is homestead then defendant's lien is valid to the extent that the lien is subrogated to the purchase money liens and real property

taxes. If not homestead, then USA's lien is valid in full." Either way, the government argues, it has a valid and enforceable lien against the disputed land.

quired title to the 139.021 acres and was additionally secured by a deed of trust lien.

- On February 21, 1973, plaintiffs purchased an additional 18.65 acres in Guadalupe County, Texas (also part of the disputed land) for $11,000. This property is contiguous to the tracts purchased in 1972. Purchase money financing of $7,300 was provided by Westside. The note executed by plaintiffs to Westside was secured by a vendor's lien retained in the deed by which they acquired title to the 18.65 acres and was additionally secured by a deed of trust lien.

- In late November and December of 1973, plaintiffs refinanced the Westside notes through The Federal Land Bank. At the time of this refinancing, the balance due on the Westside notes was $57,364.20 and $7,781.80, respectively, for a total of $65,146. Westside transferred and assigned the deed of trust and vendor's liens to The Federal Land Bank.

- On April 22, 1976, Travis Savings & Loan Association of San Antonio ("Travis"), a federally insured savings and loan association, issued a Loan Commitment to plaintiffs. The commitment was for a loan in the amount of $120,000 to be secured by the disputed land. According to the commitment, the security for the loan was designated as "non-homestead property." Travis required plaintiffs furnish an affidavit prior to any disbursements, stating the disputed land was not their homestead.

- On May 17, 1976, plaintiffs purchased a 0.226 acre tract in Seguin, Guadalupe County, Texas. This property ("Seguin property") was later designated and declared under oath by plaintiffs to be their homestead.

- On May 21, 1976, four days after purchasing the Seguin property, plaintiffs closed on the loan they requested from Travis. Travis advanced the sum of

$120,000. The Federal Land Bank note balance of $67,005 was paid and $49,891 was advanced to plaintiffs. The Federal Land Bank released its liens; however, plaintiffs expressly agreed The Federal Land Bank's lien was renewed, extended and carried forward in full force and effect to secure the payment of the note to Travis. The deed of trust also contained the following recital and representation under oath by plaintiffs:

> Grantors further represent that the above described property *is no part of their homestead residence or business, that they have no intention of using same as such, and that said property is not exempt from forced sales under the laws of the State of Texas.* Grantors make this representation as an inducement to the beneficiary in order to obtain the loan of funds represented by the Note secured hereby. (emphasis added).

- Also on May 21, 1976, at the time of closing on the loan from Travis, plaintiffs executed an affidavit declaring under oath:

> We have this date executed a Deed of Trust dated May 19, 1976, to ... Travis, ... for the principal sum of $120,000.00 conveying [the disputed land] *and as an inducement to make said loan we represent that the property described in said Deed of Trust and herein before described [the disputed property] is no part of our homestead; that we do not now use or occupy same, or any part thereof, and have no intention of ever using or occupying same, or any part thereof, as our homestead.* (emphasis added).

- On the same day, plaintiffs executed a "Non–Homestead Affidavit and Designation of Homestead" disclaiming the disputed land as their homestead and stating they "now reside upon, use and

claim as their legal homestead, the [Seguin property]." This Non–Homestead Affidavit and Designation of Homestead were filed in the real property records of Guadalupe County, Texas, and contain the following declarations under oath by plaintiffs:

> [T]hat neither of them now resides upon, uses in any manner, claims as either a business or residence homestead and has no present intention of ever in the future residing upon, using or claiming as either a business or residence homestead, and does hereby now renounce and disclaim any homestead right, interest or exemption in the [disputed property]. *That they now reside upon, use and claim as their legal homestead the [Seguin property], which said last described property is improved with a dwelling house, is amply sufficient as a residence homestead for them and the fee simple title to which is vested in them and they hereby set apart and designate the said last described property as the homestead to which their family is entitled, under the Constitution and the Laws of the State of Texas, exempt from forced sale, and they further declare [the Seguin property] is all of the property and the only property to which they are now entitled as a homestead exempt from forced sale.*

Plaintiffs further acknowledge the Non–Homestead Affidavit and Designation of Homestead was made to "induce Travis Savings and Loan Association to make a mortgage loan secured by a deed of trust upon [the disputed land]."

● On or about January 25, 1977, plaintiffs executed a warranty deed conveying the disputed land to Vogel Farms. The deed recited the conveyance was made for "valuable consideration" including Vogel Farm's assumption of plaintiffs' debt to Travis. The warranty deed was recorded in the real property records of Guadalupe County, Texas.

● On February 8, 1977, Articles of Incorporation were filed creating Vogel Farms.

● On February 10, 1977, Mercantile Bank ("Mercantile") loaned $75,000 to Vogel Farms. The loan was secured by a deed of trust covering the disputed land, which provided it had been granted for the purpose of "discharging corporate debts, and in furtherance of its Charter power." This note and lien were secondary and inferior to the Travis liens.

● Vogel Farms executed a Deed of Trust to Secure Assumption, recorded in the real property records of Guadalupe County, Texas. By this Deed of Trust to Secure Assumption, Vogel Farms promised to pay the debt previously owed by plaintiffs to Travis.

● On April 20, 1978, Vogel Farms obtained a loan from the Small Business Administration to secure a note in the amount of $50,000. This loan was secured by a deed of trust recorded in the real property records of Guadalupe County, Texas, and was subject to the $120,000 note to Travis and the $75,000 note to Mercantile.

● On May 21, 1979, Vogel Farms refinanced the Travis and Mercantile debt with the Farmers Home Administration (now known as the Farm Service Agency), an instrumentality of the United States of America. Vogel Farms signed a real estate lien note in the original principal amount of $205,000. From the loan proceeds, the Farmers Home Administration paid the balance remaining due on the Travis note and the Mercantile note. The note was secured by a deed of trust covering the disputed land, and was signed by plaintiff Norwin Vogel, President of Vogel Farms.

- In December of 1986, plaintiffs defaulted on their loan with the Farm Service Agency.
- On March 2, 1992, plaintiffs filed a Designation of Homestead in the real property records of Guadalupe County declaring the disputed property as their homestead.
- On March 5, 1993, Vogel Farms, Inc., by Norwin H. Vogel, President, executed a general warranty deed reconveying the disputed property to the plaintiffs individually.
- The loan proceeds were received by plaintiffs and Vogel Farms, Inc. and have not been repaid.

In filing this lawsuit and in their motion for summary judgment, plaintiffs seek to disavow their sworn representations and the representations by them as officers of the corporation that the property was not their homestead. In response, the government contends the lien is not subject to plaintiffs' homestead claim. In considering cross-motions for summary judgment, the Court found "genuine issues of material fact exist which preclude summary judgment on the homestead issue including: (1) whether the government met its duty of inquiry to determine whether the sale of the property to Vogel Farms, Inc. was a sham or pretend sale and (2) whether the plaintiff's abandoned their homestead rights because the disputed land was devoted to a business use at the time the government's lien arose." (Docket no. 63).

In this second motion for summary judgment, the government contends the 1979 deed of trust lien held by the government is superior to the homestead claims of plaintiffs by virtue of contractual and equitable subrogation rights. The government argues, irrespective of the validity or invalidity of plaintiffs' homestead claim, the 1979 deed of trust lien relates back to the admittedly valid liens securing the purchase of the alleged homestead land and the payment of ad valorem taxes because of the doctrine of subrogation. The government seeks a subrogated interest as of April 1, 2000, after accruing interest, of $151,912.22 plus a per diem interest accrual of $17.08 thereafter. Plaintiffs respond: (1) the disputed land is their homestead; (2) the Farm Home Administration documents bind corporations not individuals; (3) no right of contractual subrogation exists; and (4) the Vogels have already paid the debt attributable to purchase money and taxes. Alternatively, plaintiffs argue, if these arguments do not defeat defendant's motion as a matter of law, plaintiffs have raised genuine issues of material fact which preclude summary judgment.

## ENCUMBRANCES FOR PURCHASE MONEY AND PROPERTY TAXES NOT SUBJECT TO HOMESTEAD EXEMPTION

Encumbrances may be fixed on Texas homestead property for purchase money and taxes against the land. TEX. CONST. ART. XVI, § 50, 51; TEX.PROP.CODE § 41.001 et seq. Article XVI, section 50, of the Texas Constitution provides in relevant part:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale for the payment of all debts except for:

(1) the purchase money thereof, or a part of such purchase money;

(2) the taxes due thereon. . . .

TEX. CONST. ART. XVI, § 50. Homestead property is thus exempt from forced sale for the payment of all debts except in constitutionally enumerated instances. These exceptions include the payment of the homestead's purchase money and unpaid taxes Id. Here, it is undisputed the purchase money mortgage liens in favor of Westside created at the time of acquisition of the disputed property were valid. It is also undisputed subsequent loan transactions were advanced by the lenders to pay accrued ad valorem taxes on the land. Applying the principles set forth above, the purchase money and tax liens at issue

are not subject to the homestead exemption.

## SUBROGATION

In Texas, there are two kinds of subrogation: "conventional," sometimes referred to as "contractual," which arises by agreement of the parties, and "legal," which is controlled by principles of equity. *M.D. Fleetwood v. Med Ctr. Bank*, 786 S.W.2d 550, 554 (Tex.App.—Austin 1990, writ denied). "Subrogation has been recognized as an important doctrine and has traditionally received favorable treatment in Texas." *Id.* (citing *Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 807 (Tex. 1978)). Subrogation commonly arises in the mortgage law context when a lender or other third party advances funds to pay off a prior lien on property. *Id.* "Texas courts have long held that:

> '[o]ne who advances money to pay off an incumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer, and, in the event the new security is for any reason not a first lien on the property, the holder of such security ... will be subrogated to the rights of the prior incumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby.' "

*Id.* (quoting *Sanger Bros. v. Ely & Walker Dry Goods Co.*, 207 S.W. 348, 349 (Tex.Civ. App.—Fort Worth 1918, writ ref'd)). As stated by the Texas Supreme Court:

> The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own.... One who pays a debt at the instance of the debtor, under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, may, as against the debtor, be subrogated to the benefit of such security, and of the debt which he has discharged.

*Oury v. Saunders*, 77 Tex. 278, 280, 13 S.W. 1030, 1031 (1890). One who is subrogated is entitled to be reimbursed to the extent such payments operated to discharge the liens with legal interest thereon from the date of discharge. *See Phipps v. Fuqua*, 32 S.W.2d 660, 663 (Tex.Civ.App.—Amarillo 1930, writ denied); *Williams v. Daniel*, 30 S.W.2d 711, 715 (Tex.Civ. App.—Fort Worth 1930, writ denied).

## ANALYSIS

Plaintiffs do not dispute summary judgment evidence showing the original purchase money liens granted in favor of Westside were transferred and/or were expressly renewed and extended by all loan documents after the original purchase money loans made by Westside. The subsequent loan proceeds were advanced by the lenders at the request of the owner of the property or the holder of the encumbrances to pay prior purchase money loans, accrued interest thereon and/or ad valorem taxes.

### A. The Federal Land Bank Refinance

The Federal Land Bank refinanced the Westside purchase money loans for a total of $65,146.00. Westside transferred and assigned the deeds of trust and vendor's liens to The Federal Land Bank at that time. The Federal Land Bank also advanced $605.01 for payment of ad valorem taxes owing on the disputed land, bringing the total amount financed to 65,751.01.

B. *Travis Savings and Loan Association Refinance*

The Travis loan of $120,000.00 paid to The Federal Land Bank refinanced the note balance of $65,005.00, along with 1975 ad valorem taxes of $828.01, plus additional closing costs for a total of $67,833.01. The deed of trust securing the Travis note specifically and expressly renewed and extended The Federal Land Bank note and lien.

C. *Farmers Home Administration (now known as the Farm Service Agency) Loan*

Out of the original principal loan of $205,000.00, the sum of $125,462.32 was paid to Travis as the balance remaining due on the Travis note. The subrogated amount was $67,833.01 because the Travis note was not reduced prior to this payment. Additionally, out of the $205,000.00 original principal amount, ad valorem taxes against the disputed land in the amount of $826.93 were paid to the Marion Independent School District, and $621.25 was paid to the State of Texas and the County of Guadalupe collectively. The total subrogated amount out of the Farmers Home Administration loan of $205,000.00 was $69,281.77 as of May 21, 1979. This was secured by the 1979 deed of trust lien.

D. *Interest and Total Subrogated Amount*

In addition to the subrogated amount of $69,281.77, Vogel Farms, Inc., by Norwin H. Vogel, President, and Erline E. Vogel, Secretary, agreed on May 21, 1979, through the Farmers Home Administration note, to pay interest on all unpaid principal amounts at the rate of 9% per annum. Calculating interest at 9% per annum, after allowing for all offsets and credits, the undisputed accrued interest through April 1, 2000, is $82,631.03, for a total subrogated amount of $151,912.80, with a per diem interest accrual of $17.08 thereafter.

PLAINTIFFS' CONTENTIONS

Plaintiffs argue the disputed land is their homestead. As discussed above, the homestead issue is rendered moot by the application of the doctrine of subrogation. When a lender advances funds to pay a valid encumbrance on a homestead under circumstances from which it can be implied at least part of the advancement made is intended to be secured by a first lien on the land encumbered, the new lender is subrogated to the rights of the prior encumbrancers which are superior to homestead rights, and is entitled to foreclose upon the homestead upon default. *Means v. United Fidelity Life Ins. Co.*, 550 S.W.2d 302, 309 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). Even if the new lender pays off a prior encumbrance and receives a void or defective mortgage, the new lender will be subrogated to the discharged encumbrance. *See id.* This is true even if the property is homestead property. As explained by the Texas Supreme Court:

> One who discharges the vendor's lien upon lands,—*even the homestead,*—either by paying as surety, or at the request of the debtor, or at a judicial sale, which, for irregularities in the process, fails to convey the title, is entitled to be subrogated to the lien of the creditor to the extent of the payment so made.

*Faires v. Cockrill*, 88 Tex. 428, 437, 31 S.W. 190, 194 (1895) (emphasis added); *see also First Nat'l Bank v. O'Dell*, 856 S.W.2d 410 (Tex.1993).

Plaintiffs also contend the Farmers Home Administration loan documents bind Vogel Farms, Inc. only, and not the Vogels individually. Contractual privity between the Vogels individually and the Farmers Home Administration is not required for the government to be contractually and/or equitably subrogated to the purchase money deed of trust liens. The summary judgment record shows the Vogels constitute all of the officers, directors and shareholders of Vogel Farms, Inc.; the Vogels knew

the Farmers Home Administration deed of trust was going to encumber the disputed land because they signed the loan documents on behalf of the corporation. In *Leonard v. Brazosport Bank,* 628 S.W.2d 216, 219 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), a Texas court of appeals held, because the borrowers under the prior loan were the owners and officers of the corporation which borrowed the funds to pay off the prior loan, and as they were present at the closing, they consented to a portion of the new loan's proceeds being paid to satisfy the prior loan. As defendant notes:

> "Conventional" or "contractual" subrogation arises out of privity between one lienholder paying off the prior lienholder, thus stepping into the shoes of the prior lienholder. *Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.,* 576 S.W.2d 794, 807 (Tex.1978). "Subrogation is the substitution of another person in place of a creditor whose claim he has satisfied so that the person subrogated (the subrogee) succeeds to all the rights, priorities, liens and quantities of the creditor in relation to the debt" G. Nelson and D. Whitman, Real Estate Finance Law, § 10.1 (2d Ed.1985). The renewal and extension language in the new deed of trust and/or the written transfer of lien by the prior lienholder to the new lender satisfy the "contractual" requirements of conventional/contractual subrogation. *See id.* Contractual privity between the borrower and the new lender is not required. *See id.*

Plaintiffs contend defendant has no right of contractual subrogation under the court's holding in *Ben E. Keith Co. v. Lisle Todd Leasing,* 734 S.W.2d 725 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). The plaintiff trucking company argued it should have the benefit of hauling rates established by statute. *Id.* at 726. The court held plaintiff could not avail itself of the statutory rates because it had failed to obtain a permit required by the statute. *Id.* at 727.

Plaintiff conceded it did not have a permit but nonetheless argued it was entitled to collect the statutory rates because it had performed services pursuant to a contractual agreement between the plaintiff and defendant. *Id.* The court did not agree:

> Any operations by [plaintiff] as a contract carrier performed without proper operating authority were illegal. Ordinarily the Texas courts will not enforce an illegal contract, particularly where the contract involves the doing of an act prohibited by statutes intended for the protection of the public health and welfare, and it is the duty of the court to at once decline to give it any validity.

*Id.* (citations omitted).

Plaintiffs attempt to use the holding of *Ben E. Keith Co.* to encompass contractual subrogation, but the facts are not the same. In *Ben E. Keith Co.,* the contract was alleged to have been between plaintiff and defendant and plaintiff was attempting to use a statute without complying with the requirements of said statute. *See id.* Here, the contractual privity creating subrogation is not between the government and the Vogels or Vogel Farms. As discussed above, the contractual subrogation is created by and between the successive lenders. Additionally, statutory compliance is not a consideration in the case at bar.

Plaintiffs next argue defendant is not entitled to equitable subrogation because the Vogels have already paid their debt attributable to purchase money and taxes. In their response to defendant's motion, plaintiffs state: "[I]f a debtor executes a partial lien invalidity clause then that clause will control. *In re Hughes,* 172 B.R. 205, 213–14 (Bankr.N.D.Tex.1993)." The Farmers Home Administration deed of trust contains a partial invalidity clause which states:

> If this deed of trust should be invalid for any purpose for which it is executed, such invalidity for such purpose shall not impair its validity for any other purpose and in the event that any portion of the indebtedness under the note when it is

held by the Government or any assignee of this deed of trust, or any portion of the indebtedness to the Government under this deed of trust, is not validly secured hereunder, then in that event, *the first payments made upon any such indebtedness shall be applied in payment of that portion of the indebtedness which is not validly secured, and no payment shall be applied toward that portion of the indebtedness secured by a valid lien hereunder until any indebtedness not so secured shall have been paid in full.*

(Emphasis added). Plaintiffs do not dispute the prior deeds of trust covering the property all contain similar partial invalidity clauses.

Plaintiffs rely upon *Mallou v. Payne & Vendig,* 750 S.W.2d 251 (Tex.App.—Dallas 1988, writ denied), when arguing equitable subrogation is not available to defendant. In *Mallou,* portions of land qualified as homestead and other portions did not. *Id.* at 255. The court held the creditors must first attempt to satisfy the debt against the non-exempt land. *Id.* at 256–57. Plaintiffs contend here, as in *Mallou,* the lender must resort first to the non-exempt portion of the security before any attempt is made to foreclose on the homestead. A contrary rule, plaintiffs argue, "results in an injustice and a sacrifice of both the homestead and the excess."

It is undisputed plaintiffs have made no payment on the Farmers Home Administration loan since 1986. It is also true they now attempt to choose how the payments made in 1979 through 1986 are applied to repayment of the principal and interest due under the Farmers Home Administration loan. In *Mallou,* the facts concerned the security for the debt. Here, plaintiffs attempt to apply the *Mallou* analysis to the debt itself, not the security. The Court does not find *Mallou* controlling under these circumstances.

Finally, plaintiffs maintain genuine issues of material fact exist which preclude summary judgment. The Court disagrees. As shown in the summary judgment evidence, after the initial Westside State Bank purchase money loans, the subsequent loan transactions made by The Federal Land Bank, Travis Savings and the Farmers Home Administration show that out of each loan the prior loans plus accrued interest were paid and accrued ad valorem taxes against the security were also paid. The total amount paid, which relates back to the original purchase money loan by West Side State Bank, is $69,281.77. Under principles of subrogation, the government, acting by and through its agency the Farmers Home Administration (now the Farm Service Agency), is subrogated in the amount of $69,281.77 plus accrued interest at the rate of 9% per annum from December 30, 1986. Accrued interest to date, as set forth above, is $82,631.03 through April 1, 2000, with a $17.08 per diem interest accrual thereafter. The total subrogated amount as of April 1, 2000, is $151,921.80. Defendant's objections to the affidavit of Steven C. Haley, which plaintiffs construe as a motion to strike, are dismissed as moot.

IT IS THEREFORE ORDERED that the Second Motion for Summary Judgment, or Alternatively Partial Summary Judgment, of Defendant, United States of America, Acting by and Through Daniel A. Glickman, Secretary of United States Department of Agriculture, and Brief in Support (docket no. 88) is GRANTED such that the Court finds defendant's lien is valid to the extent the lien is subrogated to the purchase money liens and real property taxes in the amount of $69,281.77 plus accrued interest at the rate of 9% per annum from December 30, 1986. Accrued interest is $82,631.03 through April 1, 2000, with a $17.08 per diem interest accrual thereafter. The total subrogated amount as of April 1, 2000, is $151,921.80. Motions pending with the Court, if any, are denied.

It is so ORDERED.