

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00418-CV

---

124 South Oak Street LLC and John Lanahan, Appellants

v.

Town of Pecos City, Appellee

---

On Appeal from the 143rd District Court

Reeves County, Texas

Trial Court No. 23-08-24909-CVR

---

## MEMORANDUM OPINION

The Town of Pecos City sold property to Willmar Land LLC without soliciting sealed bids or conducting a public auction. The city sued Willmar and subsequent purchasers, Appellants 124 South Oak Street, Pecos, Texas 79772, LLC and John Lanahan, seeking a declaration that the conveyances were void for violations of the Local Government Code. After a bench trial, the trial

court granted Pecos's request for declaratory relief, found that the conveyance from Pecos to Willmar was in violation of the Local Government Code and held the subsequent two deeds in the chain of title void. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In February 2019, the West of the Pecos Museum, Inc., conveyed property located in downtown Pecos and known as 118 South Oak Street to the City of Pecos by general warranty deed. Willmar expressed an interest in purchasing 118 South Oak Street for the purpose of rehabilitating the property, and it agreed to pay the $35,000 asking price set by Pecos.[1] Willmar's proposed purchase was presented to the Pecos City Council on January 28, 2021. The Council voted to sell the property to Willmar and passed a resolution to that effect. The property was deeded from Pecos to Willmar in May 2021.

Before Willmar was able to renovate 118 South Oak Street, its manager suffered a stroke. Unable to carry out its planned renovations, Willmar approached Rod Ponton—who at the time of the sale from Pecos to Willmar was Pecos's city attorney—about selling the property. Ponton was the sole owner and member of 124 South Oak LLC, which had previously purchased and renovated the property located at 124 South Oak Street—a property that shared a wall with 118 South Oak Street. Willmar conveyed the property to 124 South Oak.

Pecos filed its suit against Willmar and 124 South Oak in August 2023.[2] Pecos claimed that "[p]ursuant to Sections 253.008 and Sections 272.001 of the Local Government Code, the

---

[1] The record reflects that Pecos was motivated to sell the property given the expense involved in rehabilitating it and the lack of support from the community to do so.

[2] Pecos's impetus for bringing the lawsuit is not clear from the record. However, 124 South Oak asserted in its pleadings that the "lawsuit appears to be a politically motivated attempt to undermine Mr. Ponton." Appellants also stated that the lawsuit was brought only after Ponton purchased the property and that the "newest batch of Council members and replacement City attorney held political animus [against Ponton]."

governing body of a municipality may sell real property owned by the municipality only by public auction or by sealed bid with notice being published in the newspaper of general circulation of the county in which the land is located." Further, Pecos maintained that because the initial conveyance from Pecos to Willmar did not comply with these provisions, the sale was not done by any "valid, legal procedure," and the deed was void. Because the initial deed was void, Pecos alleged that the subsequent deed from Willmar to 124 South Oak was also void.

In its answer, 124 South Oak argued that the conveyance did comply with § 272.001 by falling under an exception to the notice and bidding requirements found in § 272.001(g), which relates to the development of low-income or low to moderate-income housing projects. 124 South Oak also claimed that it is a bona fide purchaser for value and, even if the deed is voidable, their status as a bona fide purchaser protects them. 124 South Oak additionally maintained that the doctrine of estoppel by deed precluded Pecos from denying the validity of the initial conveyance from Pecos to Willmar as well as the subsequent purchasers.

After filing suit, Pecos filed a notice of lis pendens on the subject property in September 2023. About a month later, 124 South Oak sold 118 South Oak Street to Lanahan. Pecos amended its petition in June 2024 to add Lanahan as a defendant, arguing that the conveyance to him was also void. Lanahan filed a counterclaim for inverse condemnation, arguing that Pecos's attempt to cancel his deed amounted to an unlawful taking or inverse condemnation.

The trial court held a bench trial during which Ponton, the city manager, and Lanahan testified. The trial court found that the sale of 118 South Oak Street from Pecos to Willmar was "in violation of the statutory requirements of Sections 253.008 and 272.001 of the Texas Local Government Code." It also found that the deed from Pecos to Willmar did not fall under the notice and bidding exception since it was "not for the public purpose of the development of low-income

3

or moderate-income housing." The trial court declared the original deed and the two subsequent deeds void, ordered that Pecos be granted title to 118 South Oak Street, and declared that all defendants have "no estate, right, title, lien, or interest in or to" 118 South Oak Street, thus granting Pecos's request for declaratory relief.

124 South Oak and Lanahan (Appellants) appealed.[3] They raise four issues: (1) that the trial court erred when it voided the original deed from Pecos to Willmar; (2) that it was error to declare void the subsequent deeds ignoring "bona fide purchasers"; (3) that the trial court incorrectly "applied the doctrine of estoppel by deed when voiding the original conveyance from Pecos to Willmar, after the property had been sold by Willmar to subsequent bona fide purchasers for value"; and (4) that the court erred "in failing to grant Appellant Lanahan counterclaims for inverse condemnation and unconstitutional taking of property without just compensation" in violation of the U.S. and Texas Constitutions.

## II. ANALYSIS

### A. Section 272.001(g) exception

Section 253.008 of the Local Government Code requires that municipalities sell real property by sealed bid or public auction. Tex. Loc. Gov't Code Ann. § 253.008(a). Municipalities and other local government entities may sell real property through a sealed bid procedure that involves the government providing notice of the sale. *See id*. § 272.001(a). Section 253.008(b) details the procedures to be used should the municipality choose to sell property by public auction. *Id*. § 253.008(b).

---

[3] Willmar is not party to this appeal.

4

There are, however, statutory exceptions that authorize municipalities to convey property without following the requirements of § 253.008(b). Pertinent to this case is an exception authorizing the sale of property to be used for low-income or moderate-income housing:

> A political subdivision may acquire or assemble land or real property interest, except by condemnation, and sell, exchange, or otherwise convey the land or interests to an entity for the development or low-income or moderate-income housing. The political subdivision shall determine the terms and conditions of the transactions so as to effectuate and maintain the public purpose. If conveyance of land under this subsection serves a public purpose, the land may be conveyed for less than its fair market value. In this subsection, 'entity' means an individual, corporation, partnership, or other legal entity.

*Id*. § 272.001(g).

## B. Standard of review

Appellants argue that § 272.001(g) applies and excepted the city's sale of the property from bidding and auction requirements.[4] An appellate court reviews pure questions of law de novo. *HNMC, Inc v. Chan*, 683 S.W.3d 373, 380 (Tex. 2024); *W&T Offshore, Inc. v. Fredieu*, 610 S.W.3d 884, 896 (Tex. 2020). To the extent that an issue involves a question of statutory construction, the proper standard of review is de novo as well. *Maxim Crane Works, L.P. v. Zurich American Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022). We further review the trial court's application of the law to the facts de novo. *In re San Jacinto River Auth.*, No. 14-21-00228-CV, 2021 WL 1778076, at *1 (Tex. App.—Houston [14th Dist.] May 5, 2021, no pet.) (mem. op.) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

---

[4] Appellants state in their summary of argument that they "challenge the legal and factual sufficiency of the trial court's ruling." They do not argue, however, about the sufficiency of *the evidence* to support the trial court's ruling, but about whether the trial court correctly construed and applied § 272.001.

### C. Analysis[5]

The parties agree that the conveyance from Pecos to Willmar was not done by sealed bid or auction. The dispute is whether the Pecos to Willmar conveyance was "for the public purpose of the development of low-income or moderate-income housing . . . ." The trial court found that the exception did not apply. We agree.

There is no evidence that Pecos's purpose in selling the property was to provide housing for low-income or moderate-income people. The agenda and minutes from the January 28, 2021 Pecos City Council meeting make no mention of low-income or moderate-income housing as being a purpose for the sale of the property. The resolution passed by the City Council makes no mention of housing at all. Rather, the resolution merely states that Pecos purchased the buildings "for the purposes of rehabilitating the building to aid in the revitalization of the downtown and to expand the downtown park boundaries . . . " and that the buyer would follow through with these intentions. Indeed, at the January 28 meeting the city manager said that the city purchased the property "for the intention of expanding the park" and of "having a Downtown meeting area, Event Center type of thing in the downtown." At trial, the city manager reiterated that the city was wanting to expand an adjacent park and was considering a conference room and locating the Chamber of Commerce at 118 South Oak Street.

Nor do the conveyances themselves require that the property be developed for low-income or moderate-income housing. There is no evidence that Willmar purchased the property with the intention of developing low-income or moderate-income housing. Ponton himself admitted that

---

[5] Appellants argued that Pecos's initial argument was waived for inadequate briefing. We hold that briefs must "be liberally, but reasonably, construed so that the right to appeal is not lost by waiver." *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020); *see Los Compadres Pescadores, LLC v. Valdez*, 622 S.W.3d 771, 780 (Tex. 2021) ("We generously construe our rules to avoid finding briefing waiver in this Court."). Courts should refrain from resolving cases based on procedural defects and instead work to resolve cases on their merits. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020) (per curiam).

the deed did not bind Willmar to develop housing. The city manager also admitted that the conveyance did not require Willmar to construct low-income or moderate-income housing at 118 South Oak Street. According to the manager, there were no stipulations regarding the development of 118 South Oak Street, other than it be remodeled.

Appellants do not dispute any of these facts but argue that inferences of the parties' intentions were sufficient for the conveyance to meet the statutory exception:

> While the City did not follow the precise language of Local Government Code § 272.001(g) when carrying out the transaction, a clear record exists showing that the City had previously assembled properties for sale to private entities capable of carrying out development of property for housing as an established policy, with Willmar certainly voicing a desire [to] undertake such redevelopment. The Court can follow the trajectory of the sale to conclude that the original conveyance was a valid attempt at an exempt sale under the applicable statute.

They further contend that the record indicates that the backdrop for the conveyance to Willmar was that Willmar sought to undertake redevelopment efforts in "the same fashion as the neighboring 124 S Oak Property [which] had been refurbished and turned into housing and offices by Rod Ponton."[6] Ponton had purchased 124 South Oak Street and developed four apartments there. According to Appellants, Ponton received a loan from Pecos to purchase 124 South Oak Street that was meant to facilitate redevelopment and economic vitality in the downtown area.

By Ponton's own admission, the loan he obtained for 124 South Oak Street had nothing to do with 118 South Oak Street. But even if it did, there is no evidence that Ponton was specifically charged with developing "low-income or moderate-income housing." *See* Tex. Loc. Gov't Code Ann. § 272.001(g). In fact, part of the loan to Ponton was for office space for his law firm.

Ponton testified that, when he was serving as Pecos's city attorney, he and the city manager believed that 118 South Oak Street was "being sold for economic development, [and therefore] it

---

[6] Ponton testified that Pecos sold the property to Willmar "[f]or the purpose of doing the same thing for the housing on this property as 124 South Oak Street, LLC, had done for housing on 124 South Oak Street, an adjacent property."

was a lawful transaction for the city to sell the property the way it was sold." But the statute does not apply to "economic development" generally. *See* Tex. Loc. Gov't Code Ann. § 272.001(g); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."). Pecos may have wanted to develop housing and revitalize the downtown area,[7] but an unspoken, unstated purpose cannot provide the basis to avoid the sealed bid or auction procedures. The statute is specific. It requires that the property is to be developed not only for housing, but for *low-income or moderate-income housing*. Even if the purchasers of the property were "capable of carrying out development of property for housing as an established policy" and had "a desire [to] undertake such redevelopment" as Appellants argue, the requirements of § 272.001(g) were simply not met.

Finally, Appellants contend that the conveyance from Pecos to Willmar was valid since the sale was a duly noticed item on the City Council agenda, was approved unanimously by open session vote of the City Council and received "legal scrutiny" from Permian Basin Abstract[8]—the entity that issued title insurance. These facts have nothing to do with low-income or moderate-income housing and therefore do not meet the exception to the requirements that the sale of public property must be by auction or sealed bid. *See* Tex. Loc. Gov't Code Ann. § 272.001(g).

### D. Void or voidable

Having found that Pecos did not comply with § 272.001, we turn to whether this violation renders the deed from Pecos to Willmar void or voidable—a purely legal question that we review

---

[7] From approximately 2017 or 2018 until 2021, there was a major housing shortage in Pecos.

[8] They further contend that the insurer "required satisfaction that the sale of the Property by the City was undertaken validly, i.e., that the Pecos [sic] had legal authority, through following statutory process and receiving council approval, to convey the Property."

8

de novo. *HNMC*, 683 S.W.3d at 380; *Fredieu*, 610 S.W.3d at 896. Whether a deed is void or voidable turns on its effect upon the title when it was executed and delivered. *Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied) (citing *Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942)). A "void" act "is one which is entirely null, not binding on either party, and not susceptible of ratification." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 547 (Tex. 2016) (quoting *Cummings v. Powell*, 8 Tex. 80, 85 (1852)). A void deed is "without vitality or legal effect." *Flories*, 317 S.W.3d at 825 (citing *Qualls*, 162 S.W.2d at 674). But a "voidable act is one which is obligatory upon others until disaffirmed by the party with whom it originated, and which may be subsequently ratified or confirmed." *HSBC* Bank, 505 S.W.3d at 547 (quoting *Cummings*, 8 Tex. at 85). A voidable deed "operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared." *Flories*, 317 S.W.3d at 825–26 (quoting *Qualls*, 162 S.W.2d at 674).

If an instrument is void, an action to quiet title can be brought at any time to set it aside. *HSBC Bank*, 505 S.W.3d at 547. But "[w]hen a deed is merely voidable, equity will not intervene as the claimant has an adequate legal remedy." *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007).

Appellants' principal contention is that for Pecos to show that the deed was void, it needed to demonstrate that the transaction involved forgery. Appellants further contend that, in the absence of evidence of forgery, Pecos could only have attempted to establish that the deed was voidable, by making a showing of "fraud, mutual mistake, failure of consideration, duress, undue influence, and or false representation." But Appellants contend that Pecos did not assert any forgery allegations and produced no evidence to establish that the deed was voidable.

We are guided by this Court's decision in *Bowling v. City of El Paso*, 525 S.W.2d 539 (Tex .App.—El Paso 1975), *writ ref'd n.r.e.*, 529 S.W.2d 509 (Tex. 1975). There we held that property conveyances from the City of El Paso were void because the City failed to comply with notice requirements of the predecessor statute to § 272.001 of the Local Government Code. *Id*. at 540–41 (discussing language formerly contained in Tex. Rev. Civ. Stat. Ann. art. 5421c-12);[9] *see also McKinney v. City of Abilene*, 250 S.W.2d 924, 926 (Tex. App.—Eastland 1952, writ ref'd n.r.e.) (holding that failure to comply with the charter provisions that dealt with notice and hearing rendered the transaction void). Section 263.007 of the Local Government Code similarly governs the sale of government-owned land, but unlike § 272.001 which applies to political subdivisions generally, § 263.007 applies exclusively to county governments.[10] *See* Tex. Loc. Gov't Code Ann. § 263.007; *Collins v. Canty. of El Paso*, 954 S.W.2d 137, 148 (Tex. App.—El Paso 1997, pet. denied). So closely aligned are the two provisions that this Court said that the two provisions

---

[9] The statute read in relevant part:

> No land owned by a political subdivision of the State of Texas may be sold without first publishing in a newspaper of general circulation in the county where the land is located or in an adjoining county, if there is no such newspaper, a notice that the land is to be offered for sale to the general public, its description, its location and the procedures under which sealed bids to purchase the land may be submitted. Notice shall be so given at least on two separate occasions and no sale shall be held less than 14 days after the last notice.

Act of May 1969, 61st R.S., ch.455, § 1, 1969 Tex. Gen. Laws 1512 (repealed 1987).

[10] It provides in relevant part:

> (a)  The commissioners court of a county may adopt a procedure by which the county may sell or lease through a sealed-bid or sealed-proposal procedure any real property, including space in a building, owned by the county.
>
> .        .        .
>
> (f) The procedure authorized by this section is an alternative procedure to the procedure authorized by Section 272.001.

Tex. Loc. Gov't Code Ann. § 263.007(a), (f).

should be read *in pari materia*.[11] *Collins*, 954 S.W.2d at 146, 148. Like our conclusion with regard to § 272.001, courts have concluded that failure to comply with § 263.007 renders a deed void. *See Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.— San Antonio 1985, writ ref'd n.r.e.) (holding that with respect to the predecessor statute[12] to § 263.007, failure to comply renders the sale void); *Wilson v. Cnty. of Calhoun*, 489 S.W.2d 393, 397 (Tex. App.—Corpus Christi 1972, no writ) (same).

Finding no reason to conclude differently in this case, we find the transaction in this case is also void.[13] *See also* David B. Brooks, 35 Tex. Prac., County and Special District Law § 9.24 (2d ed. 2025) ("The sale of property owned by counties and other political subdivisions is governed strictly by statute. The conveyance of such property in any other manner is void."); Cyrus E. Phillips IV, *Common Law Exceptions to Competitive Bidding Requirements in Public Contracts*,

---

[11] If two statutes are *in pari materia*, it means they relate to the same subject matter and that they should be construed together. *In Pari Materia*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[12] *Snyder v. Cowell*, No. 08-01-00444-CV, 2003 WL 1849145, at *4 (Tex. App.—El Paso Apr. 10, 2003, no pet.) (mem. op.) (discussing the statutory requirements prescribed in Tex. Loc. Gov't. Code Ann. § 263.007, formerly contained in Tex. Rev. Civ. Stat. Ann. art. 1577). Article 1577 provided in relevant part: "The Commissioners Court may . . . appoint a Commissioner to sell and dispose of any real estate of the county at public auction, and notice of said public auction shall be advertised at least twenty (20) days before the sale . . . ." Act of May 14, 1953, 53rd Leg., R.S., ch. 133, § 1, 1953 Tex. Gen. Laws 447, *repealed and superseded by* Act of May 21, 1987, 70th Leg., R.S., ch. 149, §§ 1, 49(1), 1987 Tex. Gen. Laws 1037, 1307 (current version at Tex. Loc. Gov't Code Ann. § 263.001 (Vernon 1988)); *see also Brownwood Ross Co. v. Maverick Cnty.*, 936 S.W.2d 42, 44 (Tex. App.—San Antonio 1996, writ denied) (quoting the language formerly contained in Article 1577). One of the main differences between § 263.007 and its predecessor is that the predecessor required bidding by public auction as opposed to a sealed-bid procedure. *Id.*

[13] *Bowling* was considered by the Texas Supreme Court on a writ of error. *Bowling v. City of El Paso*, 529 S.W.2d 509 (Tex. 1975). Although the Court refused the writ of error, finding no reversible error in the judgment, the Court issued an opinion stating that the Court "reserve[d] the question whether a failure to comply with these statutory notice requirements renders a transfer void or voidable." *Id.* We are bound by our prior judgment even if the void-or-voidable question was left unanswered by the Supreme Court, because the Supreme Court did not disturb our judgment. *See Chase Home Fin., L.L.C. v. Cal. W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is *bound* by the prior holding of another panel of this court.") (emphasis added); *see also Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (writing that the principle of "horizontal stare decisis" dictates that "three-judge panels *must* follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision") (emphasis added).

10 Wm. & Mary L. Rev. 228, 229 (1968) ("[W]here competitive bidding is required by constitution, statute, or charter, it is mandatory; and any contract awarded without complying with the requirement is void and unenforceable. Thus, strict compliance with competitive bidding requirements is a condition to the award of the contract.") (footnotes omitted) (citing CHESTER JAMES ANTIEAU, 1 MUNICIPAL CORPORATION LAW § 10.11 (1967)); *cf. Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224 (Tex. App—Houston [14th Dist.] 1999, no pet.) (contract in violation of a statute is void).

In a prior decision regarding § 272.001, we noted that "the procedure outlined in Section 272.001(a) constitutes the 'default,' minimally sufficient procedures with which all units of state government, including counties, *must* comply in order to conduct a valid sale." *Collins*, 954 S.W.2d at 149 (emphasis added). Section 272.001 serves several policy goals: protecting public property so it will not be disposed of for less than its true value, stimulating competition, and preventing favoritism. *Bell v. Katy Indep. Sch. Dist.*, 994 S.W.2d 862, 866 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Holding the deed merely voidable would provide the parties a chance to keep the transaction in place, thereby undermining these policy goals. *See In re Mabray*, 355 S.W.3d 16, 29 (Tex. App—Houston [1st Dist.] 2010, orig. proceeding) ("Texas expresses its public policy through its statutes."); *cf. Ben E. Keith Co. v. Lisle Todd Leasing, Inc.*, 734 S.W.2d 725, 727 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (Texas courts will not enforce an illegal contract and "it is the duty of the court to at once decline to give it any validity."). As Pecos notes in its briefing, if the deed were only voidable, compliance with the Local Government Code provisions would effectively become optional. We agree. *See Collins*, 954 S.W.2d at 149. We overrule Appellants' first issue.

### E. Bona fide purchasers, estoppel, and inverse condemnation

Our holding that the original deed is void directly bears upon the disposition of Appellants' other issues. Title generally cannot pass from a void deed. *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Even if Appellants were genuine bona fide purchasers, this would make no difference where the deed is void. *Id.*; *Sanchez v. Telles*, 960 S.W.2d 762, 768 (Tex. App.—El Paso 1997, pet. denied); *see also Texas Depot of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 168 (Tex. 2013) (one cannot claim to be an innocent purchaser when a void deed is in one's chain of title). The original deed lacks effectiveness from its creation which means too that estoppel cannot give the deed any legal effect. *See Nelson,* 889 S.W.2d at 318; *Magas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010, pet. denied); *Ex parte Payne*, 598 S.W.2d 312, 317 (Tex. App.—Texarkana 1980, orig. proceeding), *disapproved on other grounds*, *Huff v. Huff*, 648 S.W.2d 286 (Tex. 1983).[14] Since title never passed to Lanahan, he cannot make out a claim of inverse condemnation either. *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893, 903–04

---

[14] This decision is concerned only with conveyances governed by § 272.001 of the Local Government Code and should not be construed as a comment on conveyances not governed by § 272.001. *See* BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT 84 (2016) ("A decision's authority as precedent is limited to the points of law raised by the record, considered by the court, and determined by the outcome."); *id*. at 82 ("Although it's often easy to cherry-pick a sentence from a case to support an argument, the sentence has no precedential force unless it is relevant 'to those points of law which are raised by the record, considered by the court, and necessary to a decision.'") (quoting HENRY CAMPBELL BLACK, HANDBOOK ON THE LAW OF JUDICIAL PRECEDENTS § 11, at 49 (1912)). We emphasize this limitation at a time when the availability of equitable defenses vis-a-vis void instruments and judgments may be evolving. *See, e.g.*, *MAP Res., Inc. v. Mitchell*, 706 S.W.3d 924, 934 (Tex. App—El Paso 2024, no pet.) (holding in a suit where heirs of pre-tax-sale owner of mineral interests in real property filed suit against entities that had purchased the interests at a tax sale that defendants were entitled to defense of laches regarding a void tax judgment); *Leedy v. Leedy*, 399 S.W.3d 335, 340 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (ruling that a "party, by conduct, may be estopped from challenging a judgment as void."); *see also Mitchell v. Map Res., Inc.*, 649 S.W.3d 180, 196 n.16 (Tex. 2022) (listing cases in other states and federal jurisdictions where equitable defenses might be available in challenges to a void judgment); RESTATEMENT (SECOND) of JUDGMENTS § 66 cmt. a (1982) ("Although the parties to an action may not endow an invalid judgment with validity as such, it has long been recognized that under certain circumstances relief may be denied against a judgment that was rendered without the requisites of validity.") *cf*. Richard E. Flint, *Time to Repair the Chain: Void Deeds, Subsequent Purchasers, and the Texas Recording Statutes*, 48 St. Mary's L.J. 1, 24–42 (2016) (discussing instances where despite the rule that innocent purchaser for value status does not shield one when there is a void deed in the chain of title, Texas courts have carved out certain exceptions).

(Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("To have standing to sue for inverse condemnation, a party must have a property interest at the time of the alleged taking.").

We overrule Appellant's second, third, and fourth issues.

## III. CONCLUSION

The record reveals that Pecos did not convey 118 South Oak Street for the purpose of developing low-income or moderate-income housing. As a result, § 272.001(g) did not apply and provide an exception to the requirements for the sale of public property under the mandatory provisions of the Local Government Code. This rendered the subsequent deeds in the chain of title void. We affirm the judgment of the trial court.

MARIA SALAS MENDOZA, Chief Justice

October 14, 2025

Before Salas Mendoza C.J., Palafox and Soto, JJ.